1   **JEFFREY E. ESTES, ESQ. (CA BAR #89102)**
    **JEFFREY E. ESTES & ASSOCIATES**
2   501 West Broadway, Suite 1650
    San Diego, CA 92101
3   Tel. (619) 233-8021

4   Attorneys for Plaintiff, ATLANTIC BUSINESS ORGANIZATION CORPORATION,
    a California corporation, dba ABO PHARMACEUTICALS

FILED

08 FEB -5 PM 3:06

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

5

6

7

8                           **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12  ATLANTIC BUSINESS ORGANIZATION          Case No. **08 CV 0227 DMS NLS**
    CORPORATION, a California corporation, dba
13  ABO PHARMACEUTICALS,                     **PLAINTIFF'S COMPLAINT FOR:**

14                         Plaintiff,         **(1) BREACH OF CONTRACT;**
                                              **(2) BREACH OF COVENANT OF**
15  vs.                                       **GOOD FAITH AND FAIR DEALING;**
                                              **(3) UNFAIR BUSINESS PRACTICES**
16  UPS CAPITAL INSURANCE AGENCY, INC.        **FOR DAMAGES**
    OF CALIFORNIA, a Connecticut corporation; **(4) NEGLIGENCE**
17  INDEMNITY INSURANCE COMPANY OF
    NORTH AMERICA, , a Pennsylvania                        and
18  corporation; UNITED PARCEL SERVICE,
    INC. , a Georgia corporation; and, DOES 1 **PLAINTIFF'S DEMAND FOR JURY**
19  through 20,                               **TRIAL**

20                         Defendants.

21

22

23                          **Demand for Trial by Jury**

24  COMES NOW PLAINTIFF respectfully requesting trial by jury in this matter.

25                   **General Allegations As To All Defendants**

26  Plaintiff, ATLANTIC BUSINESS ORGANIZATION CORPORATION, a California

27  corporation, dba ABO PHARMACEUTICALS(hereinafter "Plaintiff"), alleges:

28  / / /

ABO V. UPS, ET AL. FEDERAL COMPLAINT

1        1. Plaintiff is, and at all times mentioned herein was, a corporation organized and doing

2    business in the County of San Diego, State of California.

3        2. Plaintiff is informed and believes, and on the basis of such information and belief, alleges

4    that Defendant UPS CAPITAL INSURANCE AGENCY, INC. OF CALIFORNIA (hereinafter "UPS

5    CAPITAL") was at all times mentioned in this Complaint, a corporation or other business entity duly

6    organized and existing pursuant to the laws of the State of Connecticut or of some other state or

7    country, and is authorized to conduct business as an insurer and was so engaged in such business at

8    all relevant times in the State of Connecticut.  Plaintiff is further informed and believes and based

9    thereon alleges that this Defendant caused to be issued a marine policy or policies of insurance which

10   named Plaintiff as an insured.

11       3. Plaintiff is informed and believes, and on the basis of such information and belief, alleges

12   that Defendant INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (hereinafter

13   "INDEMNITY") was at all times mentioned in this Complaint, a corporation or other business entity

14   duly organized and existing pursuant to the laws of the State of Pennsylvania or of some other state

15   or country, and is authorized to conduct business as an insurer and was so engaged in such business

16   at all relevant times in the State of Pennsylvania.  Plaintiff is further informed and believes and based

17   thereon alleges that this Defendant issued a marine policy or policies of insurance which named

18   Plaintiff as an insured.

19       4. Plaintiff is informed and believes, and on the basis of such information and belief, alleges

20   that Defendant UNITED PARCEL SERVICE, INC. (hereinafter "UPS") was at all times mentioned

21   in this Complaint, a corporation or other business entity duly organized and existing pursuant to the

22   laws of the State of Georgia or of some other state or country, and is authorized to conduct business

23   as a delivery service and was so engaged in such business at all relevant times in the State of

24   California.

25       5. Plaintiff is informed and believes, and on the basis of such information and belief, alleges

26   that Defendants DOES 1 through 20, inclusive, were and at all times mentioned in this Complaint

27   are, involved and participated in the wrongful conduct which is the basis of this Complaint.

28   / / /

ABO V. UPS, ET AL. FEDERAL COMPLAINT                        - 2 -

1      6.  The true names and capacities, whether individual, corporate, associate, partnership or

2  otherwise, of the Defendants designated as DOES 1 through 20 are unknown to Plaintiff at this time,

3  who therefore sues these Defendants by such fictitious names.  Plaintiff will seek leave of court to

4  amend this Complaint to show their true names and capacities when and if the same have been

5  ascertained.  Plaintiff is informed and believes, and on the basis of such information and belief

6  alleges, that at all times herein mentioned, each of the Defendants sued herein as DOE had and

7  continues to have a duty to Plaintiff under the insurance policies issued to Plaintiff.

8      7.  Defendant INDEMNITY issued one or more policies of insurance, including marine

9  policy number 496961-322 (hereinafter "Subject Policy") to Plaintiff as the named insured, through

10  its agent, UPS CAPITAL.  A true and correct copy of the policy is attached as Exhibit A to the

11  complaint.

12      8.  Pursuant to the Subject Policy referenced above, Defendant INDEMNITY promised to

13  pay those damages suffered by Plaintiff due to damages, as defined in the Subject Policy.

14      9. On or about December 11, 2006, Plaintiff's property suffered damage due to the delivery

15  of the cargo by UPS.  Plaintiff's customer, Precision Pharma, promptly notified ABO when it

16  received the damaged boxes leaking ABO's product of Human Serum Albumin 25%, 100 ml

17  solution. Plaintiff provided notice of the damage of property to Defendant UPS CAPITAL. Plaintiff

18  promptly filed a claim for the damage of the property to Defendant UPS CAPITAL. Plaintiff has

19  performed all covenants and conditions on their part which must be performed in order to obtain

20  recovery under the Subject Policy referenced herein, or has been excused from so performing as a

21  result of Defendant INDEMNITY's breach of its insuring agreement.  Plaintiff repeatedly requested

22  Defendant INDEMNITY, through its agent UPS CAPITAL, compensate Plaintiff for damage of the

23  property and INDEMNITY has consistently failed to acknowledge and fulfill its obligations under

24  the aforementioned Subject Policy.

25  / / /

26  / / /

27  / / /

28  / / /

# FIRST CAUSE OF ACTION

## Breach of Contract

(Against INDEMNITY INSURANCE COMPANY OF NORTH AMERICA and DOES 1 through 10)

10.   Plaintiff re-alleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 9, inclusive, of the above General Allegations as if fully set forth herein, and further alleges:

11.   Plaintiff regularly paid premiums and performed each act required of it to keep the Subject Policy issued by Defendants in full force and effect throughout the respective policy period.

12.   Defendants were timely given notice of the request for compensation for damaged property.   Despite a clear duty to investigate the claim in a timely manner and pay damages, Defendants failed to perform a timely and adequate investigation and failed to compensate Plaintiff for its damages.   The acts of Defendants' employees and/or agents in this regard were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of Defendants.

13.   Plaintiff fully or substantially complied with all of its contractual obligations under the Subject Policy issued by Defendants or was excused from so doing as a result of Defendants' actions. Notwithstanding this fact, Defendants refused to properly investigate the claim and failed to fully compensate Plaintiff for its damaged property, in breach of the Subject Policy.

14.   The failure and refusal of Defendants to adequately investigate the claims of Plaintiff, and the failure and refusal to fully compensate Plaintiff for its damaged property constitute breaches of Defendants' contractual duties under the Subject Policy.   The acts of Defendants' employees and/or agents in this regard were done with the knowledge or under the express direction or ratification of an officer, director or managing agent of Defendants.

15.   As a direct and proximate result of such breaches by Defendants, Plaintiff has suffered damages, including, but not limited to, the cost of damaged property, loss of business, and attorneys' fees and costs incurred to obtain the benefits of Plaintiff's coverage under Defendants' insurance policy and other foreseeable damages, in a total sum to be determined at the time of trial plus interest

1  at the legal rate.

2  ## SECOND CAUSE OF ACTION

3  ### Breach of Covenant of Good Faith and Fair Dealing

4  (Against UPS CAPITAL INSURANCE AGENCY, INC. OF CALIFORNIA, INDEMNITY

5  INSURANCE COMPANY OF NORTH AMERICA and DOES 1 through 10)

6      16.  Plaintiff refers to and incorporates herein by reference paragraphs1 through 15 as though

7  fully set forth herein, and further alleges:

8      17.  By issuing the Subject Policy to Plaintiff and accepting premiums from it, Defendants

9  assumed obligations of trust, confidence and utmost good faith to Plaintiff.

10      18.  By virtue of having assumed these obligations, Defendants owed Plaintiff a duty of good

11  faith and fair dealing, which obligated Defendants to place Plaintiff's interest equal with or ahead

12  of their own respective interests and to do nothing to deprive Plaintiff of the benefits of Defendants'

13  insurance policy. Defendants have sought to protect their own interests and breached their

14  obligations to act fairly and in good faith toward Plaintiff by engaging in the following conduct:

15      a.      Failing to conduct reasonable, timely, and unbiased investigation to fully

16          evaluate Plaintiff's request for compensation for damaged property;

17      b.      Making coverage decisions without reviewing the applicable insurance policy

18          or documentation contained within its files;

19      c.      Taking inconsistent and contrary positions;

20      d.      Basing its coverage decision on its desire to reduce or avoid its obligations

21          to Plaintiff;

22      e.      Refusing to fully compensate Plaintiff for its losses with the intention of

23          coercing Plaintiff into foregoing the benefits of the Subject Policy;

24      f.      Failing to acknowledge communications from Plaintiffs in violation of §§s

25          2695.5, 2695.6, and 2695.7 of the California Code of Regulations;

26      g.      Failing to provide copies of the Subject Policy upon request;

27      h.      Instituting and maintaining procedures, policies and/or employee

28          compensation plans which impair or preclude fair claims handling;

I.  Taking positions contrary to controlling appellate authorities;

j.  Taking positions contrary to controlling California Supreme Court authorities;

k.  Breaching provisions of the California Code of Regulations;

l.  Breaching provisions of the California Insurance Code;

m.  Taking the above-described actions for the purpose of forcing Plaintiff to forego the benefits to which it is entitled and forcing Plaintiff to expend and incur expenses in the investigation and prosecution of the within action;

n.  Taking the actions referenced in the sub-paragraphs above as part of a systematic and deliberate scheme to withhold policy benefits that would otherwise be due.

19.  Plaintiff is also informed and believes that the respective officers, directors and/or managing agents and/or employees of Defendants participated in, authorized and/or ratified the wrongful conduct of said Defendants as alleged above.

20.  As a direct and proximate result of the bad faith conduct of the Defendants in this matter, Plaintiff has incurred substantial attorneys' fees, costs and expenses in bringing this action to enforce its right as an insured under the Subject Policy. Plaintiff is entitled to recover as damages against Defendants all the aforementioned fees, costs and expenses which it has incurred as a result of the lack of proper compensation for damages with interest thereon. In addition, Plaintiff has been required to retain legal counsel in order to pursue coverage unreasonably withheld entitling Plaintiff to the recovery of attorney fees and costs. Plaintiff has suffered damages and will continue to suffer damages within the jurisdiction of this Court, according to Proof.

21.  The above described conduct of the Defendants has been and continues to be unreasonable, capricious and arbitrary, and constitutes a breach of the covenant of good faith and fair dealing implied in the Subject Policy. The above-described conduct further constitutes malicious, oppressive and despicable conduct and conscious disregard of Plaintiff's rights, and stems from improper and evil motives, including Defendants desire to reduce or avoid their obligations to Plaintiff, so as to justify an award of punitive and exemplary damages. Additionally, Plaintiff is

1  informed and believes that Defendants' acts, as described in the above paragraphs, constitute a

2  systematic, methodical and general scheme to improperly, unfairly and unreasonably deprive their

3  policyholders, such as Plaintiff, of the benefits of insurance coverage to which it is entitled.

### THIRD CAUSE OF ACTION

**Unfair Business Practices, Business & Professions Code § 17200 et seq.**

(Against All Defendants)

7  22.  Plaintiff refers to and incorporates herein by reference paragraphs 1 through 21 as

8  through fully set forth herein, and further alleges:

9  23.  Plaintiff is informed and believes, and on the basis of such information and belief

10  alleges, that Defendants engaged in the above referenced activities as part of a systematic,

11  methodical and general practice designed to deprive its insured and customer, such as Plaintiff, of

12  the policy benefits to which they would otherwise be entitled.

13  24.  If Defendants are not prevented from engaging in the above-referenced actions, they will

14  continue to engage in such activities to the detriment of their policyholders and the general public.

15  25.  Among other duties, and appropriate for relief under Business and Professions Code §

16  17200, et seq., Defendants have exhibited a practice of ignoring;

17          a.      The duty to diligently search for evidence which supports an insured's claim

18                  for coverage;

19          b.      The duty to conduct a reasonable, timely, and unbiased investigation to fully

20                  evaluate Plaintiff's request for compensation for damaged property.

21  26.  Pursuant to Business and Professions Code § 17203, this Court is authorized to enjoin

22  such violations and enforce Defendants duties as specified above.  As Plaintiff's remedies at law are

23  inadequate, a permanent injunction is necessary to prevent Defendants from engaging in the

24  complained of activities in this instance and in the future.

25  27.  Pursuant to Business and Professions Code § 17203, this Court has the power to order

26  restitution of the profits illicitly gained by Defendants through the failure of Defendants to perform

27  the duties as described above as a form of relief ancillary to the enjoining of the actions specified

28  above. The Court has the power to appoint a receiver pursuant to § 17203 et seq.  Pursuant to Code

1    of Civil Procedure § 1021.5, this Court has the further power to award reasonable attorneys' fees.

2                              **FOURTH CAUSE OF ACTION**

3                                   **Negligence**

4                               (Against UPS CAPITAL)

5        28.   Plaintiff refers to and incorporates herein by reference paragraphs 1 through 27 as
6    through fully set forth herein, and further alleges:

7        29.   Defendants and DOES 11 through 20 had a duty to deliver Plaintiff's goods in the
8    condition in which they were fit for their intended purposes and that were not defective or damaged.

9        30.   Plaintiff relied upon the duty of due care in contracting with and paying Defendants and
10   DOES 11 through 20 for their services.

11       31.   Defendants and DOES 11 through 20 breached their duty to Plaintiff by, among other
12   things, negligently delivering Plaintiff's product and by failing to use due care in performing such
13   work.

14       32.   As a direct and proximate result of such breach, Plaintiff has been damaged, as indicated
15   above, in an amount not yet determined.

16                              **PRAYER FOR RELIEF**

17       WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as
18   follows:

19                          **ON ALL CAUSES OF ACTION**

20       1.     For compensatory damages, special damages and consequential damages in the
21   amount of sixty thousand dollars ($60,000.00) or an amount according to proof at trial;

22       2.     For interest thereon at the maximum legally permissible rate;

23       3.     For costs of suit and attorneys' fees incurred herein, pursuant to Code of Civil
24              Procedure § 1021;

25       4.     Under the Second Cause of Action, attorney fees & costs under *Brandt v. Superior*
26              *Court* (1985) 27 Cal.3d 813.

27       5.     For an order enjoining Defendants from engaging in further conduct prohibited by
28   California Business and Professions Code §17200 et seq.;

6.    For statutory damages and civil penalties;

7.    For restitution;

8.    For exemplary and punitive damages in order to punish and deter Defendants from committing future such behavior;

9.    For pain and suffering resulting from Defendants' extreme and outrageous behavior;

10.    Plaintiff reserves all rights to amend this Complaint and prayer to add additional allegations and prayers for other damages; and,

11.    For such other and further relief as the Court deems just and proper.

DATED: 1/31/08

JEFFREY E. ESTES AND ASSOCIATES

By: _____

Jeffrey E. Estes, Esq.
Attorneys for Plaintiff ATLANTIC BUSINESS ORGANIZATION CORPORATION, a California corporation, dba ABO PHARMACEUTICALS

## MARINE POLICY  496961-322
### of the

## INDEMNITY INSURANCE COMPANY OF NORTH AMERICA

### SECTION I
### OCEAN CARGO

**ASSURED**

1.  Indemnity Insurance Company of North America, hereinafter referred to as the Company, n consideration of premiums to be paid at rates hereinafter stated, does insure, lost or not lost **ENTITIES TO BE ACCEPTED AND NAMED HEREIN FOR WHICH THIS COMPANY HAS AGREED TO PROVIDE CUSTOM CARGO COVERAGE**

    (Hereinafter referred to as: the Assured). For account of whom it may concern.

**LOSS PAYABLE**

2.  Loss, if any, payable to Assured or order.

**GOODS INSURED**

3.  To attach upon all shipments of lawful goods and merchandise consisting principall of: **GENERAL MERCHANDISE BUT EXCLUDING ARTICLES OF UNUSUAL VALUE, WHICH INCLUDE (BUT ARE NOT LIMITED TO): (I) COINS (EXCEPT PENNIES AND NICKELS AND EXCEPT PROOF AND MINT SETS OF UNITED STATES COINS TENDERED BY UNITED STATES MINTS OF A FACE VALUE NOT TO EXCEED $ 2.41), CURRENCY, POSTAGE STAMPS, NEGOTIABLE INSTRUMENTS, MONEY ORDERS, UNSET PRECIOUS STONES, INDUSTRIAL DIAMONDS, HUMAN REMAINS, AND WORKS OF ART; (II) ANY ARTICLE WHICH CONTAINS MORE THAN FIFTY PERCENT BY WEIGHT OF GOLD, SILVER, OR PLATINUM OR ANY COMBINATION THEREOF IN RAW FORM, BULLION, BALLS, BARS, GRAINS, STRIP, SHEET, WIRE, CHAIN, INGOTS AND THE SCRAP OF THESE METALS; AND (III) ANY PACKAGE OR LETTER HAVING A VALUE OF MORE THAN $ 50,000.00.**

**INSURABLE INTEREST**

4.  To cover all lawful shipments made by or to the Assured for their own account as Principals or as Agents for others and in which they have an insurable interest under the terms of sale; or for the account of others from whom written instructions to insure have been received prior to any known or reported loss, damage, or accident and prior to sailing of vessel.

**VALUATION**

5.  THIS IS A VALUED POLICY :

    **VALUED AT THE VALUE TO BE INSURED (SUBJECT TO POLICY DEDUCTIBLE) SHOWN IN THE INSURED VALUE FIELD IN A UPS SOURCE DOCUMENT OR IN THE UPS AUTOMATED SHIPPING SYSTEM. IN THE ABSENCE OF THE ABOVE THE VALUATION SHALL BE:**

    Valued, premium included, at amount of invoice, including all charges in the invoice, and including prepaid and/ r advanced and/or guaranteed freight, if any, plus **0%**;foreign currency to be converted into dollars a bankers' sight rate of exchange applicable to each invoice and/or credit and/or draft.

    Intercompany shipments or Merchandise otherwise shipped without an invoice shall be valued at the Assured's cost, less depreciation, on the date of the loss plus prepaid and or advanced or guaranteed freight plus 10 %.

    The preceding valuations shall be applicable unless a superceding basis of valuation appears hereafter.

**ATTACHMENT & TERMINATION**

6.  To attach on each shipment made on and after, and to remain in force continuously thereafter until cancelled by either party giving the other 30 days written notice; such cancellation, however, not to affect any transit risk on which this

insurance has attached prior to the effective date of said cancellation. Notwithstanding the above coverage provided hereunder on any risks insured on a time basis or insured for coverage at any location shall terminate as of the effective date of the cancellation.

## GEOGRAPHICAL LIMITS

7.    At and from:

      **PORTS AND/OR PLACES IN THE WORLD TO PORTS AND/OR PLACES IN THE WORLD.**

## ECONOMIC SANCTIONS AND EMBARGO PROGRAMS OF THE UNITED STATES

8.    This policy excludes loss otherwise payable to an individual, organization, or authority that is the subject of any embargo or other trade sanction imposed by the United States Government; or that arises out of any trade in, or shipment of, any goods or merchandise prohibited by such embargo or sanction, whether or not deemed lawful under the laws of another nation.

## CONVEYANCES

9.    By:
      a.    metal self-propelled vessels and connecting conveyances;
      b.    aircraft and connecting conveyances;
      c.    **BY TRUCK OR RAIL CONVEYANCE;**

## CRAFT CLAUSE (February 1949)

10.   Including transit by craft and/or lighter to and from the vessel. Each craft and/or lighter to be deemed a separate insurance. The Assured are not be prejudiced by any agreement exempting lightermen from liability.

## LIMIT OF LIABILITY

11.   This company shall not be liable for more than:

      (a)    **$ 50,000.00** in respect of goods **IN ANY ONE PACKAGE SHIPPED BY** vessel or connecting conveyance;
      (b)    $ Not Covered in respect of goods shipped ON DECK in any one vessel subject to ON DECK bills of lading
      (c)    **$ 50,000.00** in respect of goods **IN ANY ONE PACKAGE SHIPPED BY** aircraft or connecting conveyances;
      (d)    **$ 50,000.00** in respect of goods in any one package via **UPS** .
      (e)    $ Not Covered in respect of goods in any one package transported by mail or parcel post;


      If the total value at risk exceeds the applicable limit of liability provided by this Policy, the Assured shall nevertheless report to this Company the full amount at risk and shall pay full premium thereon. The acceptance by this company, of such reports and premium shall not alter or increase the limits of this Company's liability, but this Company shall be liable for the full amount of loss up to but not exceeding the applicable limit of liability.

## ACCUMULATION CLAUSE

12.   Should there be an accumulation of interests beyond the limits expressed in this Policy by reason of any interruption of transit and/or occurrence beyond the control of the Assured, or by reason of any casualty at a transshipping point and/or on any connecting conveyance, this policy shall attach for the full amount at risk, but in no event for more than twice the Policy limit as expressed in the Limit of Liability Clause, provided notice be given this Company as soon as practicable upon becoming known to the Assured.

## PERILS CLAUSE

13.   Touching the adventures and perils which this company is contented to bear and takes upon itself, they are of the seas, fires, jettisons, assailing thieves, barratry of the masters and mariners, and all other like perils, losses and misfortunes (illicit or contraband trade excepted in all cases), that have or shall come to the hurt detriment or damage of the said goods and merchandise, or any part thereof, as may be otherwise provided for herein or endorsed hereon.

## AVERAGE TERMS

14. Warranted free from Particular Average unless the vessel or craft be stranded, sunk, or burnt, but notwithstanding this warranty these assurers are to pay any loss of damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other that water, or to discharge of cargo at port of distress. Also to include the risk of jettison and washing overboard irrespective of percentage. The foregoing warranty, however, shall not apply where more limited or broader terms of Average are made applicable by this policy.

Subject to the Paramount Warranties of this Policy the terms of Average shall be as follows:

A.  (1)  Shipments ON DECK AND SUBJECT TO AN "ON DECK" BILL OF LADING: (which must be to declared to this Company)are insured; F.P.A. (Free of Particular Average) including jettison and/or washing overboard.

   (2)  Except while subject to an "ON DECK" BILL OF LADING shipments of properly packed for the intended transit are insured: To cover against all risks of physical loss or damage from any external cause irrespective of percentage, but excluding nevertheless, the risks of war, strikes, riots, seizure, detention and other risks excluded by the Nuclear Exclusion Clause, the F.C. and S. (Free of Capture and Seizure) Warranty and the S.R. and C.C. (Strikes, Riots and Civil Commotions) Warranty in this policy, except ng to the extent that such risks are specifically covered by endorsement.

B.  Goods and/or merchandise shipped on board the ocean vessel in containers (Intermodal, Over the Road or similar type) are insured subject to the provisions of this policy applying to Under Deck shipments, even though such containers be stowed On Deck, provided such goods are subject to an Under Deck or an optional Under Deck/On Deck Bill of Lading.

C.  Shipments by AIR, MAIL or Express:
   (1)  To cover against all risks of physical loss or damage from any external cause irrespective of percentage, but excluding those risk excluded by the Paramount Warranties of this Policy.
   (a)  Shipments made by AIR FREIGHT, AIR MAIL, or AIR EXPRESS are warranted free from claim for loss or damage due to cold or changes in atmospheric pressure.
   (b)  Warranted not less than 0% of the invoice value of the goods insured be declared to the airlines and connecting conveyances and so noted on all bills of lading.
   (c)  Warranted by the Assured that all packages mailed and insured under this Policy will be mailed in conformance with Parcel Post or Foreign Mail Regulations existing at the time of shipment in the country of exportation.

D.  DEDUCTIBLE: Each claim for loss or damage occurring hereunder shall be adjusted separately and from the amount of each such adjusted claim the sum of $ 100.00 shall be deducted per occurrence. The deductible shall not apply to losses recoverable under the F.P.A., Explosion, and Shore Perils Clauses of this policy or to General Average contributions, salvage charges and Sue and Labor Charges.

It is hereby understood and agreed that the Average Terms clause section titled Shipments by AIR, MAIL O  EXPRESS shall include the following :

Note --    Wherever the words "ship", "vessel", "seaworthiness", "ship or vessel owner" appear in this Policy, they are deemed to include also the words "aircraft", "airworthiness", "aircraft owner".

## WAREHOUSE TO WAREHOUSE

15. This insurance attaches from the time the goods insured leave the Warehouse and/or Store at the place named in the Policy for the commencement of the transit and continues during the ordinary course of transit, including customary transshipment, if any, until the goods insured are discharged overside from the overseas vessel at the final port.

Thereafter the insurance continues while goods insured are in transit and/or awaiting transit until delivered to final warehouse at the destination named in the Policy or until the expiry of 15 days (or 30 days if the destination to which the goods are insured is outside the limits of the port), whichever occurs first. The time limits referred to are to be calculated from midnight of the day on which the discharge overside of the goods insured from the overseas vessel is completed. The goods insured are held covered at a premium to be arranged in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the stated time limits arising from circumstances beyond the control of the Assured.

Note:    It is necessary for the Assured to give prompt notice to these Assurers when they become aware of an event for

which they are held covered" under this Policy and the right to such coverage is dependent on compliance with this obligation.

## MARINE EXTENSION CLAUSE (May 1952)

16. This policy is extended to cover all shipments which become at risk hereunder in accordance with the following clauses, which supercede and override Clause 15 (Warehouse to Warehouse) wherever they may be contradictory or at a variance.

    (I)    This insurance attaches from the time the goods leave the warehouse at the place named in the policy for the commencement of the transit and continues until the goods are delivered the final warehouse at the original destination named in the policy, or a substituted destination as provided in Clause III hereunder.

    (II)    This insurance to cover the goods during:

        (i)    deviation, delay, forced discharge, re-shipment and transshipment.

        (ii)    any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

    (III)    In the event of exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the originally insured destination, the insurance continues until the goods are sold and delivered at such port or place; or if the goods be not sold but are forwarded to the originally insured destination or to any other destination this insurance continues until the goods have arrived at final warehouse as provided in Clause I.

    (IV)    If while this insurance is still in force and before the expiry of fifteen (15) days from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge is completed, the goods are resold (not being a sale within the terms of Clause III) and are to be forwarded to a destination other than that covered by this insurance, the goods are covered hereunder while deposited at such port of discharge until again in transit or until the expiry of the aforementioned fifteen (15) days, whichever shall occur first. If a sale is effected after the expiry of the aforementioned fifteen (15) days, while this insurance is still in force, the protection afforded hereunder shall cease as from the time of the sale.

    (V)    Held covered at a premium to be arranged in case of change of voyage or of any omission or error in the description of the interest, vessel or voyage.

    (VI)    This insurance shall in no case be deemed to cover loss, damage or expense proximately caused by delay or inherent vice or nature of the subject matter insured.

    (VII)    It is a condition of this insurance that there shall be no interruption so suspension of transit unless due to circumstance beyond the control of the Assured.

    Nothing in the foregoing shall be construed as overruling the F.C. & S. Clause or as extending this insurance to cover any risk of war or consequences of hostilities.

**NOTE --**    It is necessary for the Assured to give prompt notice to these Assurers when they become aware of an event for which they are "held covered" under this Policy and the right to such coverage is dependent on compliance with the obligation.

## SOUTH AMERICA CLAUSE

17. With respect to all shipments to South America and notwithstanding anything contained elsewhere herein to the contrary (particularly the Marine Extension Clauses) the insurance provided hereunder shall continue to cover for sixty (60) days (ninety (90) days in shipments via the Magdalena River) after completion of discharge of the overseas vessel at port of destination or until the goods are delivered to the final warehouse at destination, whichever may first occur, and shall then terminate.

The time limit referred to above to be reckoned from midnight of the day on which the discharge of the overseas vessel is completed.

## PARAMOUNT WARRANTIES (April 1980)

18.    THE FOLLOWING WARRANTIES SHALL BE  PARAMOUNT AND SHALL NOT BE MODIFIED OR SUPERSEDED BY ANY OTHER PROVISION INCLUDED HEREIN OR STAMPED OR ENDORSED HEREON UNLESS SUCH OTHER PROVISION REFERS SPECIFICALLY TO THE RISKS EXCLUDED BY THESE WARRANTIES AND EXPRESSLY ASSUMES THE SAID RISKS:-

**F.C. & S.(a)**    NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY THIS INSURANCE IS WARRANTED FREE FROM:

(i)    capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

(ii)    all loss damage or expense, whether in time of peace or war caused by (i) any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter or (ii) any mine or torpedo;

(iii)    all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, or with rockets or similar missiles (other than weapons of war) or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power;

(iv)    the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom; or from the consequences of the imposition of martial law, military or usurped power; or piracy.

**S.R. & C.C.(b)**    Warranted free from loss, damage or expense caused by or resulting from:

(i)    strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrences or disorders,

(ii)    vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

### NUCLEAR EXCLUSION CLAUSE (December 1990)(c)

THE FOLLOWING CLAUSE SHALL BE CONSIDERED PARAMOUNT AND SHALL NOT BE SUPERSEDED BY ANY OTHER PROVISION STAMPED OR ENDORSED HEREON:-
Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this policy shall not apply to any loss, damage, liability or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it was caused. However, subject to all provisions of this policy, if this policy insures against fire, then direct physical damage to the property insured within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation or radioactive contamination was not caused, whether directly or indirectly, by way of the perils excluded by the F.C. & S. Warranty of this Policy.

Nothing in this endorsement shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

**DELAY(d)**

Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay whether caused by a peril insured against or otherwise.

**INHERENT VICE(e)**

Warranted free of claim for loss or damage or expense caused by or resulting from inherent vice or nature of the subject matter insured.

**INFIDELITY(f)**

Warranted free of claim for loss or damage or expense caused by or resulting from misappropriation, secretion, conversion, infidelity, theft or any dishonest act done by or at the instigation of the Assured, the consignee, shipper, supplier or other party at interest in the insured transit or their employees or agents (carriers for hire excepted).

## SUE & LABOR

19.    In case of any loss or misfortune, it shall be lawful and necessary for the Assured, his or their factors, servants and assignee, to sue, labor and travel for, in and about the defense, safeguard and recovery of the goods and merchandise, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or this Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of abandonment; to the charges whereof, this Company will contribute in proportion to the sum herein insured.

## BOTH TO BLAME CLAUSE (February 1949)

20.    Where goods are shipped under a Bill of Lading containing the so-called "Both to Blame Collision" Clause, the Assurers agree as to all losses covered by this insurance to indemnify the Assured for this Policy's proportion of any amount (not exceeding the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted the Assured agrees to notify these Assurers who shall have the right at their own cost and expense to defend the Assured against such claim.

## INCHMAREE CLAUSE (February 1949)

21.    This insurance is also specifically to cover any loss of or damage to the interest insured hereunder, through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the master, mariners, mates, engineers or pilots.

## EXPLOSION CLAUSE (February 1949)

22.    Including the risk of explosion, howsoever or wheresoever occurring during the currency of this insurance, unless excluded by Paramount warranties set forth in this policy.

## MACHINERY CLAUSE (February 1949)

23.    When the property insured under this Policy includes a machine consisting when complete for sale or use of several parts, then in case of loss or damage covered by this insurance to any part of such machine, these Assurers shall be liable only for the proportion of the insured value of the part lost or damaged, or at the Assureds option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part; but in no event shall these Assurers be liable for more than the insured value of the complete machine.

## FUMIGATION CLAUSE

24.    In the event of the vessel being fumigated and direct loss or damage to Assureds merchandise results therefrom, this Company agrees to indemnify the Assured for such loss or damage, and the Assured agrees to subrogate to this Company any recourse that they may have for recovery of such loss or damage from others.

## SHORE CLAUSE (February 1949)

25.    Where this insurance by its terms covers while on docks, wharves, or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or other accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves, even though the insurance be otherwise F.P.A.

## WAREHOUSING & FORWARDING, PACKAGES LOST IN LOADING ETC. (February 1949)

26.    Notwithstanding any average warranty contained herein, this Company agrees to pay any landing, warehousing, forwarding and special charges for which this policy in the absence of such warranty would be liable. Also to pay the insured value of any package or packages which may be totally lost in loading, transhipment or discharge.

      This insurance will also pay reasonable landing, warehousing, forwarding and special charges as a result of the insolvency or financial default of the owners, charterers, managers or operators of the vessel.

**DELIBERATE DAMAGE - POLLUTION HAZARD (July 1, 1974)**

27.  This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under the Policy subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

  This clause shall not increase the Limits of Liability provided for elsewhere herein.

**DELIBERATE DAMAGE – CUSTOMS**

28.  This insurance also covers, notwithstanding the F.C. & S. warranty specified in this policy, and subject to all other insuring terms, conditions and warranties set forth elsewhere in this policy, physical loss of and damage to the shipment arising out of the performance of inspection duties by customs service agents or other duty constituted governmental agencies.

  This clause shall not increase the Limits of Liability provided for elsewhere herein.

**IMPORT DUTY**

29.  This insurance also covers, subject to Policy terms of average, the risk of partial loss by reason of perils insured against on the duties imposed on goods imported into the United States or Canada and insured hereunder, it being understood and agreed, however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods from the time such duty is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

  Any limit of liability expressed in the Policy shall be applied separately to such increased value.

  The Assured warrants that on all risks insured hereunder a separate amount shall be reported sufficient to cover the said duty, upon which the rate of premium shall be a named percentage of the merchandise rate.

  The Assured will, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or reclaimed in respect of goods lost, damaged or destroyed. It is further agreed that the Assured shall, when this Company so elects, surrender the merchandise to the Customs authorities and recover duties thereon as provided by law, in which event claim under this Policy shall be only for a total loss of the merchandise so surrendered and expenses.

  This insurance on duty and/or increased value shall terminate at the end of the import movement covered under this Policy (including the Warehouse to Warehouse and Marine Extension Clauses if incorporated herein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the Policy during the shortage or transit subsequent thereto.

**CONSOLIDATION AND CONTAINERIZATION CLAUSE**

30.  It is hereby understood and agreed that notwithstanding anything contained elsewhere to the contrary (particularly the Warehouse to Warehouse and Marine Extension Clauses), and subject to the Limit of Liability herein, the insurance provided hereunder shall cover while on premises of freight forwarders, consolidators, truckers, warehousemen or others for the purpose of consolidation, deconsolidation, containerization, decontainerization, distribution or redistribution anywhere in the U.S. prior to loading on overseas vessel or at any transshipment point for a period not exceeding ten (10) days after the arrival at such premises. Held covered in the event of a delay in excess of the above time limit at additional premium. The Assured agrees to report all held "covered" exposures and pay premium thereon at this Company's rate.

**RETURN SHIPMENTS CLAUSE**

31.  In the event of refusal or inability of the Assured or other consignee to accept delivery of goods or merchandise insured hereunder, this insurance is extended to cover such shipments, subject to the original insured value and insured conditions, during delay and/or return or until otherwise disposed of. The Assured agrees to report the facts of such situations as soon as practicable after they have knowledge of them and pay premium, if required at rates to be agreed.

## FRAUDULENT BILL OF LADING CLAUSE

32.     This policy covers physical loss or damage to merchandise insured under this Policy occasioned through the acceptance by the Assured and/or their agents or shippers of fraudulent Bills of Lading and/or shipping receipts and/or messenger receipt.

Also loss or damage caused by the utilization of legitimate bills of lading and/or other shipping documents without the authorization and/or consent of the Assured or its agents.

In no event, however, does this Policy cover loss or damage arising from the shipper's fraud or misstatement.

## DEBRIS REMOVAL CLAUSE

33.     This policy covers expenses incurred for the removal of all debris of the property covered hereunder which may be occasioned by loss caused by any of the perils insured except that the Assurers shall not be liable under this clause for more than 10% of the insured value of the Merchandise.  This extension, however, shall not cover any liability or expense for which the Assured may be liable under any pollution statute.

## SHORTAGE FROM INTERMODAL CONTAINERS CLAUSE

34.     This Policy is also to pay shortage of contents from intermodal containers, meaning; (a) the difference between the number of packages as per shipper's and/or supplier's invoice and/or packing list which were loaded and (b) the count of packages removed taken by the Assured and/or their agent at time of container emptying, however, wherever and whenever occurring but excluding liability for any such loss which can be attributed to the forcible entry of the container which occurred following its delivery to store, warehouse or factory of the consignee at the destination to which the insured goods are insured unless covered elsewhere in this Policy.

It is understood and agreed that this is a private agreement between this Company and the Assured which the Assured will not mention in certificates of insurance, sales contracts, or otherwise.

## CONTAINER DUMURRAGE CHARGES CLAUSE

35.     This Policy shall cover demurrage charges and/or penalties assessed against, and paid by the Assured for late return of containers when said containers are retained by the Assured at the instruction of the Company for inspection by the Company's Surveyor in the investigation of loss or damage recoverable under this Policy.  The time period for which the Company shall be liable for said charges and/or penalties shall begin at the time the Company instructs the Assured to retain the containers for inspection and shall cease at the time the Company's Surveyor instructs the Assured to return the containers.

It is understood and agreed that this is a private agreement between this Company and the Assured which the Assured will not mention in certificates of insurance, sales contracts, or otherwise.

## CHANGE OF DESTINATION CLAUSE

36.     In case of change of destination, as set forth in the original report of insurance, the goods insured are held covered at a premium, if any, to be agreed upon, the Assured agreeing to report promptly all such changes to the Assurer.

## CONTROL OF DAMAGED GOODS CLAUSE

37.     It is agreed that in the event of damage to goods insured under this policy, the Assured shall retain control of all damaged goods.  The Assured, however, agrees whenever practicable to recondition and sell such such goods after removal of all brands and trademarks, the Company being entitled to the proceeds from such sale.

It is further agreed the Company will be consulted and allowed to inspect any damaged goods prior to any disposal or sales of such property.

Where it is agreed by both the Assured and the Company that the disposal or sale of such damaged goods is detrimental to the Assured's interest (or which the Assured will be unable to sell or dispose of under their agreement with any trade associations) such damage will be treated as a constructive total loss, and the goods shall be destroyed in the presence of a representative of the Company.

**GENERAL AVERAGE (February 1949)**

38.    General Average and Salvage and Special Charges payable according to United States law and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

These Assurers agree to pay General Average, Salvage and Special Charges in full, irrespective of insured and contributory values, but in no event for more than the limits of liability found elsewhere in this policy.

**CONTRIBUTORY CLAUSE**

39.    This Company shall be liable for only such proportion of General Average and Salvage Charges as the amount declared for insurance purposes (less Particular Average for which this Company is liable hereunder, if any) bears to the Contributory Value of the property hereby insured, but in no event to exceed the applicable Limit of Liability.

**BILL OF LADING CLAUSE (February 1949)**

40.    The Assured are not to be prejudiced by the presence of the negligence clause and/or latent defect clause in the Bills of Lading and/or Charter Party. The seaworthiness of the vessel as between the Assured and this Company is hereby admitted and the wrongful act or misconduct of the shipowner or his servants causing a loss is not to defeat the recovery by an innocent Assured if the loss in the absence of such wrongful act or misconduct would have been a loss recoverable on the Policy. With leave to sail with or without pilots, and to tow and assist vessels or crafts in all situations, and to be towed.

**PAYMENT OF LOSS**

41.    In the event of loss which may give rise to a claim under this Policy, prompt notice must be given to this Company. In case of loss, such loss to be paid in thirty days after proof of loss, proof of interest, and adjustment, thereof (the amount of the premium, if unpaid, and all sums due to the Company from the Assured when such loss becomes due being first deducted, and all sums coming due being first paid or secured to the satisfaction of this Company). Proof of loss to be authenticated by the Agent of this Company, if there be one where such proofs are taken; otherwise by a Correspondent of the American Institute of Marine Underwriters, if there be one where such proofs are taken, but if neither is represented, then by some other recognized Insurance Authority.

**PARTIAL LOSS**

42.    In case of partial loss by perils insured against, the proportion of loss shall be determined by a separation of the damaged portion of the insured property from the sound and by an agreed estimate (by survey) of the percentage of damage of such portion; or if such agreement is not practicable, then by public sale of such damaged portion for the account of the owner of the property, and by comparison of the amount so realized with the sound market value, but in no event to exceed the applicable Limit of Liability.

**CONSTRUCTIVE TOTAL LOSS (February 1949)**

43.    No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value when the expenditure had been incurred.

**LABELS CLAUSE (February 1949)**

44.    In case of damage affecting labels, capsules or wrappers, this Company, if liable therefore under the terms of this Policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers, and the cost of reconditioning the goods, but in no event shall this Company be liable for more than the insured value of the damaged merchandise.

**BRAND CLAUSE**

45.    In case of damage to property bearing a brand, trademark or label, the sale of which in any way carries or implies a guarantee of the supplier or the Assured, the salvage value of such damaged property shall be determined after the removal in the customary manner of all brands, trademarks or labels. The cost of such removal to be borne by this Company.

**PAIR AND SET**

46.    In the case of loss or damage recoverable hereunder to any one item of a pair or set of items such loss or damage shal be considered to effect the entire pair or set.

**OTHER INSURANCE CLAUSE**

47.    A.    If an interest insured hereunder is covered by other insurance which attached prior to the coverage provided by this Policy, then this Company shall be liable only for the amount in excess of such prior insurance; the Assured to receive return premium charged hereunder equivalent to the cost of such prior insurance at the rate of this Company.

           B.    If an interest insured hereunder is covered by other insurance which attached subsequent to the coverage provided by this Policy then this Company shall nevertheless pay to the full extent of liability under this insurance without right to claim contribution from said subsequent insurance.

           C.    Other insurance upon the property of same attaching date as the coverage provided by this Policy shall be deemed simultaneous and this Company shall be liable only for a ratable contribution to the loss or damage to the amount insured hereunder bears to the aggregate of such simultaneous insurance, the Assured to receive return premium proportionate to such reduction in liability.

**MISREPRESENTATION AND FRAUD**

48.    This Policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.

**CARRIER CLAUSE (February 1949)**

49.    Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.

**ASSIGNMENT & IMPAIRMENT OF RECOVERY**

50.    Warranted by the Assured that any assignment of this Policy or insurable interest therein or subrogation rights thereunder to any party, without consent of this Company, shall void the insurance so affected. It is further warranted that this Company shall not be bound to pay any loss which, by agreement or act of the Assured, prior or subsequent hereto, the right of recovery of the Assured for loss of or damage to any property insured hereunder, against any Carrier or Bailee, is released, impaired or lost.

         Notwithstanding the foregoing and without prejudice to this insurance, the Assured may accept from carriers only such bill of lading, receipts or contracts of transportation containing a release or limitation of liability as to the value of the goods as are customarily issued by such carriers.

         Further, in the event of loss or damage to property covered hereunder the Assured shall immediately make claim in writing against the carriers, baillees, or others involved.

**MULTIPLE RECOVERY**

51.    No loss shall be paid hereunder if the Assured has collected the same from others.

**INSPECTION OF RECORDS**

52.    This Company, or its Representative, shall have the privilege at any time during business hours to inspect the records of the Assured as respects shipments coming within the terms of this Policy both during the term of his policy and fo 12 months after its termination.

**BROKERS**

53.    (a)    It is understood that for the purposes of this insurance the Assured's Broker of Record is

                 **UPS CAPITAL INSURANCE AGENCY**
                 **35 GLENLAKE PKWY., NE # 320**
                 **ATLANTA, GA 30328**

(b)    It is a condition of this policy that the above brokers, or any substituted brokers, shall be deemed to be exclusively the agents of the Assured and not of this company in any and all matters related to, connected with, or affecting this insurance. Any notice given or mailed by or on behalf of this Company to the above brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to the Assured.

## NOTICE OF SUIT

54.    No suit, action or proceeding against this Company for the recovery of any claim shall be sustainable unless commenced within one year from the date of the happening of the accident out of which the claim arises, provided that if such limitation is invalid by the laws of the state within which the policy is issued then such suit, action or proceeding shall be barred unless commenced within the shortest limit of time permitted by the law of such state.

IN WITNESS WHEREOF, the Company has caused these presents to be signed by its President and attested by its Secretary in the City of but this Policy shall not be valid unless countersigned by an authorized representative of this Company

Countersigned at ___ATLANTA, GA___                          this day of ___13 September, 2006___ __ __

JOHN J. LUPICA, President

**Endorsement for Open Policies (Cargo)**
**Chemical, Biological, Bio-Chemical, Electromagnetic Exclusions Clause**
**(March 1, 2003)**

**This clause shall be paramount and shall override anything contained in this insurance inconsistent therewith.**

In no case shall this insurance cover loss, damage, liability or expense directly or indirectly caused by or contributed to or arising from actual or threatened act involving a chemical, biological, bio-chemical or electromagnetic weapon, device, agent or material when used in an intentionally hostile manner.

**All other terms, conditions and valuations remaining unchanged.**

Endorsement for Open Policies (Cargo)
**Extended Radioactive Contamination Exclusion Clause**
**With a USA Endorsement**
(March 1, 2003)

**This clause shall be paramount and shall override anything contained in this insurance inconsisten: therewith.**

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectl/ caused by or contributed to by or arising from

    1.1   ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel

    1.2   the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3   any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

    1.4   the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE**
**(U.S.A. ENDORSEMENT)**

This insurance is subject to the Institute Extended Radioactive Contamination Exclusion Clause (November 1, 2002) provided that

   if fire is an insured peril

   and

   where the subject matter insured or, in the case of a reinsurance, the subject matter insured by the original insurance, is within the U.S.A., its islands, onshore territories or possessions

   and

   a fire arises directly or indirectly from one or more of the causes detailed in Sub-Clauses 1.1, 1.2, and 1.4 of the Institute Extended Radioactive Contamination Exclusion Clause 1st November, 2002 any loss or damage arising directly from that fire shall, subject to the provisions of this insurance (reinsurance), be covered, EXCLUDING however any loss damage liability or expense caused by nuclear reaction, nuclear radiation, or radioactive contamination arising directly or indirectly from that fire.

**All other terms, conditions and valuations remaining unchanged.**

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff   SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   CONNECTICUT
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

08 FEB -5 PM 3: 53

'08 CV 0227 DMS NLS

SOUTHERN DISTRICT OF CALIFORNIA

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
JEFFREY E. ESTES
501 W. Broadway, suite 1650, San Diego, CA 92101 (619) 233-8021

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other / ☐ 550 Civil Rights | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Breach of contract damage to shipment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 60,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 2/5/08

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 147277   AMOUNT 350,   APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

2/5/08

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 147277    — SR**

**February 05, 2008
15:11:50**

**Civ Fil Non-Pris**
USAO #.: 08CV0227 CIV. FIL.
Judge..: DANA M SABRAW
Amount.:                    $350.00 CK
Check#.: BC#1717

**Total—>   $350.00**

FROM: ATLANTIC BUSINESS ORG. CORP.
      V. UPS CAPITAL INS. AGENCY, ET
      CIVIL FILING